# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| **HUMANIGEN, INC. and MADISON JOINT VENTURE LLC,**<br><br>Plaintiffs,<br><br>v.<br><br>**SAVANT NEGLECTED DISEASES, LLC,**<br><br>Defendant. | **C.A. N17C-07-068-PRW CCLD** |
| **SAVANT NEGLECTED DISEASES, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**HUMANIGEN, INC.,**<br>**NOMIS BAY LTD., and MADISON**<br>**JOINT VENTURE LLC,**<br><br>Defendants. | **C.A. No. 2019-0417-PRW** |

Submitted: April 8, 2021
Decided: July 9, 2021
Corrected: July 12, 2021
Withdrawn and Reissued With Clarifications: September 23, 2021

*Upon Savant Neglected Diseases, LLC's Motion for Summary Judgment,*
**DENIED**.

*Upon Humanigen, Inc. and Madison Joint Venture LLC's Motion for Summary Judgment,*
**GRANTED IN PART, DENIED IN PART**.

*Upon Nomis Bay Ltd.'s Motion for Summary Judgment,*
**GRANTED.**

# MEMORANDUM OPINION AND ORDER

Jeffrey L. Moyer, Esquire, Travis S. Hunter, Esquire, Katharine L. Mowery, Esquire, Tyler E. Cragg, Esquire, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware, *Attorneys for Humanigen, Inc., Nomis Bay Ltd., and Madison Joint Venture LLC*.

Steven P. Wood, Esquire, Travis J. Ferguson, Esquire, MCCARTER & ENGLISH, LLP, Wilmington, Delaware; Reid Skibell, Esquire, HARRIS, ST. LAURENT & WECHLSER LLP, New York, New York; Mazin A. Sbaiti, Esquire, J. Michal Zapendowski, Esquire, SBAITI & COMPANY LLC, Dallas, Texas, *Attorneys for Savant Neglected Diseases, LLC*.

**WALLACE, J.**

This case concerns accusations of fraud and breach-of-contract stemming from disputes over the parties' efforts to bring benznidazole to the U.S. market as a treatment for Chagas disease.[1] Savant Neglected Diseases, LLC and Humanigen, Inc.[2] entered a contractual agreement (the "MDC")[3] to develop benznidazole and pursue FDA approval using Savant's proprietary data. After that relationship collapsed, Humanigen sought to develop a source of venture capital using an investment vehicle—Madison Joint Venture LLC ("Madison" and together with Humanigen, "H&M")—through which Humanigen partnered with its principal creditor, Nomis Bay Ltd., to generate returns from the development of, and litigation surrounding, benznidazole.[4]

Humanigen, later joined by Madison, sued Savant in this Court.[5] Savant first

[1]  Chagas disease is a tropical disease caused by an insect-borne parasitic infection. In addition to acute symptoms that may or may not present immediately after exposure, years or decades later infected people may develop a chronic form. Both the acute and chronic courses of Chagas disease are life-threatening. *See generally Parasites – American Trypanosomiasis,* CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/parasites/chagas/gen_info/detailed.html (last visited June 21, 2021).

[2]  Then known as KaloBios.

[3]  Savant's Mot. to Dismiss Ex. A (D.I. 156). Hereinafter, all references to the Superior Court docket, *Humanigen, Inc. v. Savant Neglected Diseases, LLC*, N17C-07-068, are styled "D.I." All references to the Court of Chancery docket, *Savant Neglected Diseases, LLC v. Humanigen, Inc.*, 2019-0417, are styled "Del. Ch. D.I."

[4]  H&M's Second Am. Compl. ¶ 137, Oct. 17, 2019 (D.I. 138).

[5]  H&M's Compl., July 10, 2017 (D.I. 1); H&M's Am. Compl., Aug. 12, 2019 (D.I. 93); H&M's Second Am. Compl., Oct. 17, 2019 (D.I. 138).

removed to the United States District Court for the District of Delaware,[6] but then, after remand,[7] filed its own action in the Court of Chancery against Humanigen and Madison[8] and ultimately, Nomis Bay.[9] All claims in both suits concern the MDC.[10] And the undersigned has been designated to hear all consolidated claims in both Courts' cases.

On July 9, 2021, the Court issued a memorandum opinion and order (the "Opinion")[11] that resolved the parties' then-pending summary judgment motions. Culling a barrage of contract and fraud claims, as well as certain procedural and prudential issues those claims involved, the Opinion denied Savant's motion, granted in part and denied in part H&M's motion, and granted Nomis Bay's motion.

---

[6] Notice of Filing Notice of Removal (D.I. 5).

[7] Order Remanding Case, Feb. 5, 2019 (D.I. 9).

[8] Savant's Compl., June 4, 2019 (Del. Ch. D.I. 1).

[9] Savant's First Am. Compl. (Del. Ch. D.I. 11).

[10] On August 17, 2020, the Court issued an order and opinion granting and denying certain summary judgment and dismissal motions. *Humanigen, Inc. v. Savant Neglected Diseases, LLC*, 238 A.3d 194, 207–08 (Del. Super. Ct. 2020). The Court denied Savant's champerty claim, finding that Humanigen was within its rights to assign the contract and litigation to Madison. *Id.* at 205. Humanigen remains a surety of Madison to Savant for performance under the MDC. *Id.* at 206. Further, the Court dismissed Humanigen from all counts in its joint Superior Court complaint with Madison. *Id.* at 208. But Humanigen remains a litigant in the Savant Chancery complaint. *Id.* at 207-08.

[11] The Court later issued a revised iteration of the Opinion that corrected technical errors in the original. (D.I. 424).

H&M and Savant requested reargument under Rule 59(e) a few days later.[12] For their part, H&M observe the Opinion did not fully address its motion against one of Savant's counterclaims. Savant, on the other hand, asserts the Opinion misconstrued the scope of its concessions in finding Savant abandoned two of its counts entirely. Each motion has been opposed.[13]

H&M and Savant's contentions, when reduced, challenge the Opinion's completeness, and so the Court treats their Rule 59(e) motions as ones for clarification rather than reargument.[14] Clarification is appropriate relief from an imprecise judgment.[15] Clarification, however, is not an appropriate a vehicle for raising new arguments.[16] No matter how labeled, a party cannot use a Rule 59(e) motion to rehash unsuccessful arguments that have been preserved for, and are

---

[12] Pls.' & Def.'s Mots. for Rearg. (D.I. 425–26); *see generally* Del. Super. Ct. Civ. R. 59(e).

[13] Def.'s Opp'n. to Pls.' Mot. for Rearg. (D.I. 427); Pls.' Opp'n. to Def.'s Mot. for Rearg. (D.I. 428).

[14] *Cf. State ex rel. French v. Card Compliant, LLC*, 2018 WL 4183714, at *4 (Del. Super. Ct. Apr. 30, 2018) ("Procedurally, a motion for clarification is treated as a motion for reargument.").

[15] *E.g.*, *GXP Cap., LLC v. Argonaut Mfg. Servs., Inc.*, 234 A.3d 1186, 1191 & n.1 (Del. Super. Ct. 2020), *aff'd*, 253 A.3d 93 (Del. 2021) (observing the same and collecting authority).

[16] *E.g.*, *New Castle Cnty. v. Pike Creek Recreational Servs., LLC*, 2013 WL 6904387, at *2 (Del. Super. Ct. Dec. 30, 2013) (In considering a Rule 59(e) motion, "[t]he Court's review is limited to consideration of the record, meaning the Court may not consider issues raised for the first time . . . ." (internal quotation marks and citation omitted)).

naturally amendable to, direct appeal.[17]

Having reviewed the motions, the Court concludes clarification is warranted. Accordingly, the Court withdraws the Opinion, and replaces it with this decision.[18]

## I. FACTUAL BACKGROUND[19]

All parties here agree that a non-party competitor, Chemo Research, misappropriated Savant's data and used it to obtain FDA approval and market exclusivity for benznidazole ahead of Savant and Humanigen.[20] Humanigen sued Savant in this Court, and Madison sued Chemo Research in the New Jersey federal

---

[17] *See Allen v. Scott*, 2021 WL 3136705, at *7 (Del. July 26, 2021) ("To be preserved on appeal, . . . a question [must] be fairly presented to the trial court. To be fairly presented[,] an issue already raised in the trial court need not be re-asserted in a Motion for Reargument. To the contrary, a Motion for Reargument should not be a vehicle for one party who was unhappy with the Court's ruling to simply rehash the arguments already heard and decided by the Court." (internal quotation marks and citation omitted)); *see also In re Oxbow Carbon LLC*, 2017 WL 1191903, at *2 (Del. Ch. Mar. 30, 2017) (rejecting as an attempted "do-over" a motion for clarification where challenged ruling otherwise was "clear and unambiguous").

[18] In the interest of efficiency, and continuity of review, the Court has elected to retain as originally written the Opinion's unchallenged parts, including its factual recitations. *See, e.g.*, *Gore v. Al Jazeera Am. Holdings I, Inc.*, 2015 WL 721068, at *1 (Del. Ch. Feb. 19, 2015) (leaving a prior ruling intact save the "portion" that required clarification). As a result, the Court clarifies "via integration with its original" language this decision on the claims highlighted by the instant motions. *Card Compliant*, 2018 WL 4183714, at *4.

[19] The Court directs readers to its August 2020 opinion and order for supplemental background information and procedural history. *See generally Humanigen*, 238 A.3d 194. In turn, the Court assumes the parties' familiarity with the facts involved in this case, including those not explicitly recounted herein.

[20] *E.g.*, H&M's Second Am. Compl. ¶¶ 5, 14.

district court (the "New Jersey Suit").[21] For its part, Savant alleges that Humanigen had advance warning of the imminence of Chemo Research's FDA approval and the latter's wrongful misappropriation of Savant's proprietary data.[22] Savant also alleges that Humanigen withheld this information and abandoned its work on benznidazole, deciding to pursue litigation instead.[23]

Nomis Bay and Humanigen created and organized Madison in February 2018.[24] Nomis Bay and Humanigen are the sole members of Madison, owning 70 percent and 30 percent respectively.[25] Relevant here, that structure involved Humanigen's assignment to Madison of its MDC rights, including the license to benznidazole and its litigation rights against both Savant and Chemo Research.[26]

Last year, the Court issued an Opinion and Order dismissing Humanigen from all counts of its joint Superior Court complaint with Madison due to Humanigen's

---

[21] *See generally* Compl., *Madison Joint Venture LLC v. Chemo Research S.L.*, 2:19-cv-08012 (D.N.J. Mar. 7, 2019).

[22] Savant's First Am. Compl. ¶¶ 59–62, Aug. 27, 2019 (Del. Ch. D.I. 11).

[23] *Id.*

[24] *See* Transmittal Aff. of Travis S. Hunter Ex. 15 at 4, Aug. 27, 2019 (D.I. 107) [hereinafter "Madison Operating Agreement"] ("'Effective Date' means February 27, 2018." (emphasis omitted)).

[25] Madison Operating Agreement Ex. A.

[26] Madison Operating Agreement Ex. B at 1–2.

lack of standing.[27]  Now, three summary judgment motions pend before the Court: one from Humanigen[28] and Madison ("H&M"), one from Nomis Bay, and one from Savant.  H&M move for summary judgment against Savant's Second Amended Complaint and its Bankruptcy Proceeding Counterclaims.[29]  Nomis Bay moves for summary judgment against Savant's fraudulent transfer claim.[30]  Savant moves for partial summary judgment on four counts of H&M's Second Amended Complaint, one count of Savant's Second Amended Complaint, and two counts of Savant's Bankruptcy Proceeding Counterclaims.[31]  All are now ripe for decision.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate where the record demonstrates that 'there is no genuine issue as to any material fact and that the moving party is entitled to

---

[27]  *Humanigen*, 238 A.3d at 205–08 (holding that Humanigen assigned its right to sue Savant to Madison but remained a surety for Madison's performance under the MDC, so Humanigen's claims against Savant in the Superior Court action are dismissed but it remains a defendant in Savant's Chancery Court action.).

[28]  While Humanigen was declared not to have standing to press its joint Superior Court complaint, each party refers to Humanigen and Madison as a unit and the two entities share a unity of interests; so, to avoid unnecessary confusion, both parties will be referred to as "H&M" except where it is particularly relevant to distinguish between the two.

[29]  H&M's Mot. for Summ. J., at 1 (D.I. 377).

[30]  Nomis Bay's Mot. for Summ. J., at 25 (D.I. 378).

[31]  Savant's Mot. for Partial Summ. J., at 4 (D.I. 379).

judgment as a matter of law.'"[32]  "But, summary judgment will not be granted if 'a material fact is in dispute' or it 'seems desirable to inquire thoroughly into [the facts] to clarify the application of the law to the circumstances.'"[33]  The movant bears the initial burden of demonstrating its motion is supported by undisputed material facts.[34]  If that burden is met, then the non-movant must demonstrate that there is a "genuine issue for trial."[35]  And to determine whether there is a genuine issue, the Court construes the record in the light most favorable to the non-movant.[36]

This framework "is not altered" by the presence of cross-motions for summary judgment.[37]  Where cross-motions for summary judgment are filed on a particular issue and neither party argues the existence of a genuine issue of material fact thereon, "the Court shall deem the motions to be the equivalent of a stipulation for

[32]  *Parexel Int'l (IRL) Ltd. v. Xynomic Pharms., Inc.*, 2020 WL 5202083, at *4 (Del. Super. Ct. Sept. 1, 2020) (quoting Del. Super. Ct. Civ. R. 56(c)); *see also Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995) ("If the facts permit reasonable persons to draw but one inference, the question is ripe for summary judgment.").

[33]  *Unbound Partners Ltd. P'ship v. Invoy Holdings Inc.*, 251 A.3d 1016, 1023 (Del. Super. Ct. 2021) (alteration in original) (quoting *Ebersole v. Lowengrub*, 180 A.2d 467, 468–69 (Del. 1962)).

[34]  *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).

[35]  Del. Super. Ct. Civ. R. 56(e).

[36]  *Judah v. Del. Tr. Co.*, 378 A.2d 624, 632 (Del. 1977).

[37]  *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1050 (Del. Super. Ct. 2001) (internal quotation marks omitted).

decision on the merits based on the record submitted with the motions."[38]  Still, "the

presence of cross motions for summary judgment does not act *per se* as a concession

that there is an absence of factual issues."[39]  "Even when presented with cross-

motions for summary judgment, the [C]ourt is not relieved of its obligation to deny

summary judgment if a material factual dispute exists."[40]  In determining whether

material facts are in dispute, the Court evaluates each motion separately.[41]  And,

consistent with Rule 56 review, the Court will deny summary judgment and submit

the case to a fact finder if "it is not reasonably certain that there is no triable issue"

of fact.[42]  For though "summary judgment is encouraged when possible, there is no

---

[38]  Del. Super. Ct. Civ. R. 56(h).

[39]  *United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997).

[40]  *Fasciana v. Elec. Data Sys. Corp.*, 829 A.2d 160, 166 (Del. Ch. 2003).

[41]  *See Empire of Am. Relocation Servs., Inc. v. Com. Credit Co.*, 551 A.2d 433, 435 (Del. 1988) ("It is imperative that the court consider whether there is a genuine issue of material fact each time [summary judgment] motions are presented.").

[42]  *Unbound Partners*, 251 A.3d at 1024 (internal quotation marks omitted); *see Cont'l Ins. Co. v. Rutledge & Co., Inc.*, 750 A.2d 1219, 1227–28 (Del. Ch. 2000) ("[T]he Court [] maintains the discretion to deny summary judgment if it decides a more thorough development of the record would clarify the law or its application." (citing *Alexander Indus., Inc. v. Hill*, 211 A.2d 917, 918–19 (Del. 1965))); *cf. Jeffries v. Kent Cty. Vocational Tech. Sch. Dist. Bd. of Educ.*, 743 A.2d 675, 677 (Del. Super. Ct. 1999) ("[A] matter should be disposed of by summary judgment whenever a *question of law is involved* and a trial is unnecessary." (emphasis added) (citing *State ex rel. Mitchell v. Wolcott*, 83 A.2d 759, 761 (Del. 1952))); *see also Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1150 (Del. 2002) ("The trial court may deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." (cleaned up)).

absolute right to summary judgment."[43]

## III. DISCUSSION

### A. H&M'S SUMMARY JUDGMENT MOTION TARGETING SAVANT'S SECOND AMENDED COMPLAINT.

#### 1. Declaratory Judgment that the Rights to Benznidazole IP and Related Claims Have Reverted to Savant (Count I).

#### a. Savant Abandoned Count I.

Through Count I, Savant sought declaratory judgments grounded on various contractual provisions that, either individually or at an unspecified critical mass, allegedly prevent H&M from stopping its benznidazole development efforts and from transferring benznidazole property rights to certain third parties.[44] The Opinion did not consider H&M's motion against Count I because the Opinion found Savant forfeited Count I in its entirety.[45] On that finding Savant seeks reconsideration.

In finding Savant forfeited Count I in its entirety, the Opinion relied on a concession Savant made in its opposition brief. In a footnote, Savant had said:

> To streamline it[s] case for trial, Savant has decided to no longer pursue its breach of contract claims based on champerty, the assignment to Madison, and the change-of-control provision (*Counts 1 and 3*); its separate constructive trust claim (Count 5), though it still seeks that remedy for its fraudulent transfer claim (Count 4); and counterclaims 3, 4, and 6.[46]

---

[43] *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 443 (Del. 2005).

[44] Savant's Second Am. Compl. ¶¶ 88–97 (D.I. 302).

[45] Memo. Op. & Order, July 12, 2021, at 4 n.23, 7 n.36 (corrected opinion) (D.I. 424).

[46] Savant's Br. in Opp'n to H&M's Mot. for Summ. J., at 19 n.6 (D.I. 393) (emphasis added).

"Voluntary and knowing concessions of fact," like these, "are traditionally considered conclusive and binding upon the party against whom they operate, and upon the court."[47] Given that a party's factual admissions are binding on the tribunal in which they are made and on the party who made them, the Court was constrained to accept Savant's concession. Indeed, Savant now acknowledges its footnote could have been interpreted to forfeit Count I *in toto*.[48] Savant, by consequence, is estopped from changing course through a motion for reargument.[49]

Undeterred, Savant insists the footnote jettisoned only four of the seven "theories" comprising Count I, not the whole thing.[50] But Savant did not identify in

---

[47] *Merritt v. United Parcel Serv.*, 956 A.2d 1196, 1201–02 (Del. 2008) (emphasis added); *cf. AT&T Corp. v. Lillis*, 953 A.2d 241, 257 (Del. 2008) (holding that legal conclusions, as opposed to factual admissions, are non-binding and may be retracted by the party or ignored by the court).

[48] *See* Savant's Mot. for Rearg. at 2 ("In hindsight, this footnote could have been written more clearly to indicate that Savant was" not dropping Count I in its entirety.)

[49] *AT&T*, 953 A.2d at 257; *see Motorola Inc. v. Amkor Tech., Inc.*, 958 A.2d 852, 859 (Del. 2008) ("[J]udicial estoppel . . . prevents a litigant from advancing an argument that contradicts a position previously taken that the court was persuaded to accept as a basis for its ruling.").

[50] As support for this position, Savant calculates the "percentage" of pages H&M devoted to moving against Count I and an excerpted colloquy from oral argument in which counsel appeared to believe Count I was still in the case. Savant's Mot. for Rearg. at 2–3. The Court, however, is not bound by counsel's view of the law or the litigation strategies a party deploys. *See Levinson v. Del. Comp. Rating Bureau, Inc.*, 616 A.2d 1182, 1186 (Del. 1992) ("[W]hen counsel speaks of legal principles . . . he makes no judicial admission . . . [that] would prevent the court from applying to the facts . . . the proper legal principles . . . ." (third and fourth ellipses added) (internal quotation marks omitted)); *see also Blinder, Robinson & Co., Inc. v. Bruton*, 552 A.2d 466, 473 (Del. 1989) ("Judicial admissions [that] are binding on the tendering party are limited to factual matters in issue and not to statements of legal theories or conceptions.").

-10-

the footnote the exact theories it did not intend to drop. Perhaps it couldn't. Even now, Savant seems unfamiliar with its own allegations; it seeks reconsideration of theories that are not present in Count I.[51]

Aside from contradicting the footnote, Savant's multi-theory approach to pleading claims suffers a systemic issue. Rather than pleading all its breach-of-contract and declaratory allegations separately as individual claims that could be discerned and examined properly, Savant stuffed thinly differentiated breach-of-contract and declaratory "theories" into two counts branded with underinclusive headings that do not accurately preview what a reader will find inside. Pleading multiple theories within one count, as Savant has done, can cause procedural problems, not the least of which being incomplete judgments.[52]

No matter how many related theories underpin it, the wrong alleged and its underlying theories are procedurally one claim.[53] And it would seem only far to

---

[51]  *Compare* Savant's Mot. for Rearg. at 4 (citing MDC "Section 7.5" and "the implied covenant" as theories in Count I), *with* Savant's Second Am. Compl. ¶¶ 88–97, 114 (D.I. 302) (listing neither in Count I but noting the implied covenant in Count III). Indeed, Section 4.5 is not referenced in the complaint at all.

[52]  *See Intermec IP Corp. v. TransCore, LP*, 2021 WL 3620435, at \*24 n.214 (Del. Super. Ct. Aug. 16, 2021) (noting that "sub-theories" pleaded within single counts are "easy to miss" and suggesting that claimants who take a multi-theory pleading approach proceed at their own peril).

[53]  *See, e.g.*, *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012) ("A claim is the aggregate of operative facts [that] give rise to a right enforceable in the courts. One claim supported by multiple theories does not somehow become multiple claims." (internal quotation marks and citation omitted)); *see also* 10 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2657 (4th ed. 2021).

require far greater precision by a claimant both in its initial pleading and any subsequent abandonment.[54]   Indeed, given the unitary claim model our procedural law has established, a claimant cannot "strike" isolated theories within its own claims without, at least, moving for an appropriate amendment.[55]   Savant didn't. Rather, it said it was dropping the claim in whole only to try to walk that back later.

In short, Savant's decision to strike by opposition brief unidentified theories within Count I also sacrificed Count I entirely.  As a result, H&M's motion against Count I is **GRANTED**.

### b. *Even if Not Abandoned, Count I Wouldn't Survive Summary Judgment.*

To reiterate, Count I fails in its entirety because either Savant intended to forfeit it or procedural law, under these circumstances, operated to the same end. Nonetheless, the Court concludes for completeness Count I would fail on the merits. In doing so, the Court limits itself to the theories Savant has identified as remaining: breach of MDC Sections 4, 5.4, 7.5, and 13.3, and breach of an implied covenant.[56]

---

[54]   *See Intermec*, 2021 WL 3620435, at *24 n.214 ("If a defendant must attack whole counts, a defendant should have whole counts to attack."); *Int'l Bus. Machs. Corp. v. Priceline Grp. Inc.*, 2017 WL 1349175, at *6–7 (D. Del. Apr. 10, 2017) (substantially the same).

[55]   *See inVentiv Health Clinical, LLC v. Odonate Therapeutics, Inc.*, 2021 WL 252823, at *5 (Del. Super. Ct. Jan. 26, 2021).  Requiring amendments through Rule 15 motions or equivalents is one solution, but, no doubt, there are others.  Delaware courts have discretion to manage their dockets and may decide for themselves what paradigm best promotes resource conservation, efficient outcomes, and similar advantages. *E.g.*, *Unbound Partners*, 251 A.3d at 1030–31.

[56]   Savant's Mot. for Rearg. at 4.

As an initial matter, Section 7.5 and an implied covenant are not alleged in Count I. Briefs do not amend pleadings.[57] As a result, the Court will not consider these. Similarly, Savant's reading of Section 5.4 will be discussed—and rejected—below.[58] So the Court need not consider it here anymore.

That leaves Sections 4 and 13.3. Neither survives. Section 13.3 allows—but does not require—the MDC's parties to terminate the contract if one party breaches materially.[59] As this provision confers a right, not a duty, Savant has failed to show an express obligation requiring a party to exercise its discretion to terminate.[60]

Finally, Section 4 outlines the parties' drug development program. Using Section 4, Savant contends Humanigen breached by stopping its development efforts. Savant's arguments therefore turn on Section 4's "Diligent Efforts" provision.[61] Under the MDC, Diligent Efforts are defined, in relevant part, as "the performance of obligations . . . consistent with the efforts a [p]arty devotes (and

---

[57] *E.g.*, *Lima USA, Inc. v. Mahfouz*, 2021 WL 3877969, at *12 (Del. Super. Ct. Aug. 31, 2021); *Intermec*, 2021 WL 3620435, at *24 n.214, *25 n.231; *GWO Litig. Tr. v. Sprint Sols., Inc.*, 2018 WL 5309477, at *17 n.177 (Del. Super. Ct. Oct. 25, 2018).

[58] *See infra* III.A.4.b.

[59] MDC § 13.3 ("Either Party . . . *may* . . . terminate this Agreement in the event the other Party . . . materially breached or defaulted . . . .").

[60] *E.g.*, *VLIW Tech., Inc. v. Hewlett–Packard Co.*, 840 A.2d 606, 612 (Del. 2003) (stating breach of an obligation as a required element of a breach-of-contract claim).

[61] MDC § 4.4; *see also id.* § 5.3.

which in no event shall be less than the level of effort and resources . . . in the biopharmaceutical industry) for the [e]xploitation of a product . . . that is at a similar stage in its development . . . , in each case based on the conditions then prevailing."[62]

Summary judgment is appropriate here. First, as H&M press, Savant has not discovered material evidence suggesting H&M did not exercise Diligent Efforts or that the Efforts they did exercise fell below what a comparable entity in the biopharmaceutical industry would have done under the "conditions then prevailing"—*i.e.*, a competitor's misappropriation and subsequent monopolization of the very data the parties had been developing.

And second, Savant has not offered a reasonable interpretation of the MDC's *force majeure* clause, which by its plain terms,[63] applies to a situation like this where a party is precluded from performance because a third party controls by government authorization the means of developing what the parties planned to commercialize.[64]

---

[62] *Id.* § 1.

[63] *See, e.g. Exelon Generation Acquisitions, LLC v. Deere & Co.*, 176 A.3d 1262, 1273 (Del. 2017) (reversing lower court for considering extrinsic evidence of meaning of "unambiguous" *force majeure* clause); *Stroud v. Forest Gate Dev. Corp.*, 2004 WL 1087373, at *5 (Del. Ch. May 5, 2004) ("Application of a *force majeure* provision, as with any other contractual provision, starts with the words chosen by the drafters.").

[64] *See id.* § 15.1 (listing, among other categories that could apply to the FDA, "regulation[s]" and "requirement[s] of any government" as circumstances excusing default). Savant unsuccessfully cites a case governed by New York law for the proposition that a *force majeure* clause, to be applicable, must spell out the exact event alleged to have prevented performance. *See United States v. Panhandle E. Corp.*, 693 F. Supp. 88, 96 (D. Del. 1988). That, of course, is not Delaware law. *See, e.g., ev3, Inc. v. Lesh*, 114 A.3d 527, 529 n.3 (Del. 2014) ("Delaware law respects the freedom of parties to strike bargains and honors and enforces those bargains as plainly written."

-14-

Savant could have limited the scope of the *force majeure* clause to exclude FDA-related hardships or to include only unforeseeable events.[65] It didn't. Yet, "[t]he proper way to allocate risks in a contract is through the bargaining process. It is not the court's role to rewrite the contract between sophisticated market participants, allocating the risk of an agreement after the fact . . . ."[66]

To blunt the application of contract language it drafted, Savant points out that the *force majeure* provision contains a "reasonable efforts" qualifier that prevents H&M from claiming an excuse unless they work to mitigate the excusing event's impact.[67] True—but Savant has not rebutted H&M's claim that Madison's pursuit of Chemo in the New Jersey Action is a reasonable effort to override the FDA's grant and to resume performance. Because Savant has not met its burden to the

---

(internal quotation marks omitted)); *Active Asset Recovery, Inc. v. Real Est. Asset Recovery Servs., Inc.*, 1999 WL 743479, at *11 (Del. Ch. Sept. 10, 1999) (finding that omission of a specific term in a contract "speaks volumes" about the parties' intent when construing included terms (citing 3 Corbin on Contracts § 552 (1960))); *see also Fortis Advisors LLC v. Shire US Holdings, Inc.*, 2017 WL 3420751, at *8 (Del. Ch. Aug. 9, 2017) (analogizing counterparties' omission of specific terms to the statutory canon of *expresio unius est exclusio alterius*, which provides that an omission presumptively is intentional when other terms are included instead); *DeLucca v. KKAT Mgmt., L.L.C.*, 2006 WL 224058, at *2 (Del. Ch. Jan. 23, 2006) ("[I]t is not the job of a [Delaware] court to relieve sophisticated parties of the burdens of contracts they wish they had drafted differently but in fact did not.").

[65] *See, e.g.*, *Akorn, Inc. v. Fresenius Kabi AG*, 2018 WL 4719347, at *60–61 (Del. Ch. Oct. 1, 2018); *W. Willow–Bay Ct., LLC v. Robino–Bay Ct. Plaza, LLC*, 2007 WL 3317551, at *11 (Del. Ch. Nov. 2, 2007).

[66] *Wal–Mart Stores, Inc. v. AIG Life Ins. Co.*, 872 A.2d 611, 624 (Del. Ch. 2005), *rev'd in part on other grounds*, 901 A.2d 106 (Del. 2006).

[67] MDC § 15.1.

contrary, H&M's summary judgment must be **GRANTED** against Savant on this ground and the other theories.[68]

### 2. Declaratory Judgment that Savant is Entitled to Its Portion of Any Recovery from the New Jersey Action (Count II).

Savant seeks a declaration that it is entitled to the proceeds from Madison's role in the New Jersey Suit.[69]  H&M contends that the claim is "unripe, precluded by contract, and has been waived."[70]

The Court's power to issue a declaratory judgment derives from the Delaware Declaratory Judgment Act.[71]  A declaratory judgment "is designed to promote preventative justice."[72]  It is "[b]orn out of practical concerns,"[73] enabling a court to decide a controversy "prior to the time when a remedy is traditionally available" by catalyzing the matter to justiciability.[74]  "Not all disputes, however, are appropriate

---

[68]  *Moore*, 405 A.2d at 680 (explaining summary judgment burden shifting); *see Brzoska*, 668 A.2d at 1364 ("If the facts permit reasonable persons to draw but one inference, the question is ripe for summary judgment.").

[69]  Savant's Second Am. Compl. ¶¶ 98–106 (D.I. 302).

[70]  H&M's Br. in Opp'n to Savant's Partial Mot. for Summ. J., at 32.

[71]  *See generally* DEL. CODE ANN. tit. 10, § 6501 (2020).

[72]  *Schick Inc. v. Amalgamated Clothing & Textile Workers Union*, 533 A.2d 1235, 1237–38 (Del. Ch. 1987) (quoting *Stabler v. Ramsey*, 88 A.2d 546, 557 (Del. 1952)).

[73]  *Id.* at 1238.

[74]  *Diebold Comput. Leasing, Inc. v. Com. Credit Corp.*, 267 A.2d 586, 591–92 (Del. 1970).

for judicial review when the parties request it."[75] A declaratory judgment request presupposes a still-evolving controversy, imposing jurisdictional limitations.[76] A court cannot accelerate an embryonic matter to a stage traditionally justiciable if doing so would produce an advisory opinion along the way.[77] Stated prudentially, a court cannot issue a declaratory judgment unless the matter is sufficiently ripe.[78] To pronounce a declaration before the facts have ripened "not only increases the risk of an incorrect judgment in the particular case, but risks, as well, an inappropriate or unnecessary step in the incremental law building process itself."[79] Accordingly, the viability of Savant's allegations depends on their ripeness.

A ripeness challenge attacks a court's subject matter jurisdiction, and so may be fended *sua sponte*.[80] "A case is ripe for judicial review when the dispute has

---

[75] *Town of Cheswold v. Cent. Del. Bus. Park*, 188 A.3d 810, 816 (Del. 2018).

[76] *E.g.*, *Schick*, 533 A.2d at 1238–39 ("A number of important concerns have led courts . . . to decline [declaratory judgment] jurisdiction in instances in which a controversy is deemed to have not yet matured to a point at which judicial action is appropriate.").

[77] *Stroud v. Milliken Enters., Inc.*, 552 A.2d 476, 479 (Del. 1989).

[78] *Rollins Int'l, Inc. v. Int'l Hyrdonics Corp.*, 303 A.2d 660, 662–63 (Del. 1973).

[79] *Schick*, 533 A.2d at 1239; *accord Stroud*, 552 A.2d at 480; *see also XL Specialty Ins. Co. v. WMI Liquidating Tr.*, 93 A.3d 1208, 1217 (Del. 2014) ("The underlying purpose of the [ripeness] principle is to conserve limited judicial resources and to avoid rendering a legally binding decision that could result in premature and possibly unsound lawmaking." (citing *Stroud*, 552 A.2d at 480)).

[80] *E.g.*, *B/E Aerospace, Inc. v. J.A. Reinhardt Holdings, LLC*, 2020 WL 4195762, at *2–3 (Del. Super. Ct. July 21, 2020); *see* Del. Super. Ct. Civ. R. 12(h)(3) (directing dismissal "[w]henever it appears by suggestion of the parties or otherwise" that this Court lacks subject matter jurisdiction).

matured to the point where the [claimant] has suffered or will imminently suffer an injury."[81] In other words, a case "will be deemed ripe if litigation sooner or later appears to be unavoidable and where the material facts are static."[82] In contrast, "[a] dispute will be deemed not ripe where the claim is based on uncertain and contingent events that may not occur, or where future events may obviate the need for judicial intervention."[83] Ascertaining the difference "involves interest balancing, weighing 'the interests of the court . . . in postponing judicial review until the question arises in some more concrete and final form' against 'the interests of those who seek relief from the challenged action's immediate and practical impact upon them.'"[84]

As an initial matter, Savant contends elliptically that the Court's prior opinion "implicitly rejected" a ripeness challenge.[85] But the Court did no such thing. And even if it did, subject matter jurisdiction can be raised at any time,[86] despite not

---

[81] *Town of Cheswold*, 188 A.3d at 816.

[82] *XL Specialty*, 93 A.3d at 1217.

[83] *Id.* at 1217–18 (internal quotation marks and citation omitted).

[84] *Goldenberg v. Immunomedics, Inc.*, 2021 WL 1529806, at *19 (Del. Ch. Apr. 19, 2021) (quoting *Schick*, 533 A.2d at 1239).

[85] Savant's Br. in Opp'n to H&M's Mot. for Summ. J., at 21 ("Copying from their failed motion to dismiss, Plaintiffs contend that Savant's declaratory judgment claim is not ripe for adjudication. That argument was implicitly rejected by the Court in denying their motion to dismiss. *See Humanigen*[, 238 A.3d at 202] (finding that Savant's challenged claims stated valid causes of action).").

[86] *E.g.*, *B/E Aerospace*, 2020 WL 4195762, at *2 ("As [a] subject matter jurisdiction challenge[], [ripeness] might be raised *sua sponte* by the Court *at any time*." (emphasis added)).

having been recognized as a problem before.[87]  The Court thus takes the issue up afresh.

In support of ripeness, Savant contends "[t]he issue is ripe because there are sufficient facts before the Court to enable an analysis of the contractual language in issue as well as the facts surrounding Humanigen's material breaches[.]"[88]  But, as H&M notes, resolution of the New Jersey Suit "is years away" and the associated recovery and jury award are speculative.[89]  Because of that, the Court should not engage in theoretical allocations and apportionment before that judgment is absolute. After all, it is entirely possible that nothing will be awarded, and accordingly, entirely possible that a decision here will be but an advisory opinion.

Nonetheless, Savant cites the following passage from *Rollins International, Inc. v. International Hydronics, Corp.*[90] to imply that a court *can* provide an advisory opinion when deciding a declaratory judgment claim.[91]

---

[87]  *E.g.*, *Stroud*, 552 A.2d at 477 (dismissing appeal as unripe where the Supreme Court raised ripeness for the first time at oral argument); *see also Perlman v. Vox Media, Inc.*, 2019 WL 2647520, at *4–5 (Del. Ch. June 27, 2019) (dismissing for lack of subject matter jurisdiction on summary judgment despite denying a motion to dismiss earlier in the case).

[88]  Savant's Second Am. Compl. ¶ 106.

[89]  H&M's Br. in Opp'n to. Savant's Partial Mot. for Summ. J., at 33.

[90]  303 A.2d 660 (Del. 1973).

[91]  Savant's Br. in Opp'n to H&M's Mot. for Summ. J., at 21.

> While it is true that courts will not entertain suits seeking an advisory opinion or an adjudication of hypothetical questions, the courts do entertain declaratory judgment actions where the alleged facts are such that a true dispute exists and eventual litigation appears to be unavoidable.[92]

Nothing in this language, though, suggests an advisory opinion ever is permissible. That aside, *Rollins'* "unavoidable" language seems hardly consonant with the very real possibility here that nothing will be recovered in the New Jersey Suit. Accordingly, Savant's declaratory judgment claim (Count II) is **DISMISSED**, and H&M's Summary Judgment Motion on this claim is **MOOT**.

### 3. Breach of Contract Against Humanigen (Count III).

Count III seeks as a counterpart breach-of-contract damages for the wrongdoing alleged in Count I. As explained, however, Count III was abandoned in the same footnote as Count I. The procedural analyses applicable on reconsideration, therefore, are equally applicable here. Still, for completeness, the Court **GRANTS** Humanigen summary judgment on the merits.

In moving for reargument, Savant identifies two theories that should preclude summary judgment: the prevention doctrine and the implied covenant. The Court will review—and reject—Savant's prevention doctrine argument later.[93] But it rejects Savant's implied covenant now.

---

[92] *Rollins*, 303 A.2d at 662.

[93] *See infra* III.A.4.a.

To state a claim for breach of the implied covenant, a claimant must allege: "(1) a specific implied contractual obligation; (2) a breach of that obligation; and (3) resulting damage."[94] The implied covenant of good faith and fair dealing inheres in all contracts and exists to fill unanticipated gaps in a contract's express terms.[95] It "preserve[s] the economic expectations of the parties" by "ensur[ing] that the parties deal honestly and fairly with each other when addressing" unexpected contractual developments.[96] Put differently, the implied covenant prevents a contracting party from acting "arbitrarily and unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected."[97]

But, as a matter of black-letter law, the implied covenant "cannot be used to vary a contract's express terms."[98] "[E]xpress contractual provisions 'always supersede' the implied covenant," and so a party invoking the implied covenant must

[94] *KT4 Partners LLC v. Palantir Techs. Inc.*, 2021 WL 2823567, at *26 (Del. Super. Ct. June 24, 2021) (internal quotation marks omitted).

[95] *Dieckman v. Regency GP LP*, 155 A.3d 358, 367 (Del. 2017).

[96] *Glaxo Grp. Ltd. v. DRIT LP*, 248 A.3d 911, 919 (Del. 2021) (citation omitted).

[97] *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010).

[98] *Buck v. Viking Holding Mgmt. Co. LLC*, 2021 WL 673459, at *5 (Del. Super. Ct. Feb. 22, 2021); *see Nemec*, 991 A.2d at 1125–26 ("[O]ne generally cannot base a claim for breach of the implied covenant on conduct authorized by the agreement." (alteration in original) (quoting *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441 (Del. 2005))).

plead a "gap" for which the covenant might supply a term.[99]  Savant, though, has not

pleaded a gap.  Instead, Savant claims Humanigen concealed Chemo's attempts to

obtain FDA approval, ceasing performance and selling assets rightfully belonging

to Savant along the way.[100]  The MDC, however, governs those through the Diligent

Efforts and asset sale and transfer provisions.  As a result, Savant's implied covenant

claim is a duplicative breach claim and fails as a matter of law.[101]

Contrary to Savant's contentions, the implied covenant's "good faith"

component "does not envision loyalty to [a] contractual counterparty."[102]  Despite

its name, "the covenant does not establish a free-floating requirement that a party

---

[99]  *Bandera Master Fund LP v. Boardwalk Pipeline Partners, LP*, 2019 WL 4927053, at \*22 (Del. Ch. Oct. 7, 2019) (quoting *Gerber v. Enter. Prods. Holdings, LLC*, 67 A.3d 400, 419 (Del. 2013), *overruled in part on other grounds by Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808, 815 n.13 (Del. 2013)).

[100]  Savant's Br. in Opp'n to H&M's Mot. for Summ. J., at 39–40 (D.I. 393).

[101]  *E.g.*, *Edinburgh Holdings, Inc. v. Educ. Affiliates, Inc.*, 2018 WL 2727542, at \*9 (Del. Ch. June 6, 2018) ("The implied covenant . . . cannot be invoked to override the express terms of a contract.  Thus, if the contract at issue expressly addresses a particular matter, an implied covenant claim respecting that matter is duplicative and not viable." (internal quotation marks and citations omitted)); *accord Buck*, 2021 WL 673459, at \*5 (dismissing an implied covenant claim that "merely repackage[d]" a breach-of-contract claim); *see also Murfey v. WHC Ventures, LLC*, 236 A.3d 337, 350 (Del. 2020) ("Implying a term that the parties did not expressly include risks upsetting the economic balance of rights and obligations that the contracting parties bargained for in their agreement."); *Oxbow Carbon & Mins. Holdings, Inc. v. Crestview–Oxbow Acquisition, LLC*, 202 A.3d 482, 507 (Del. 2019) ("Delaware's implied duty of good faith and fair dealing is not an equitable remedy for rebalancing economic interests after events that could have been anticipated, but were not, that later adversely affected one party to the contract.  Rather, the implied covenant is an extraordinary legal remedy." (internal quotation marks and citations omitted));

[102]  *Gerber*, 67 A.3d at 419 (emphasis and internal quotation marks omitted).

act in some morally commendable sense."[103]  And it does not "necessarily require that a party have acted in subjective good faith."[104]  Instead, it exists to deter arbitrary or unreasonable conduct that would spoil the fruits of a bargain.[105]  Savant, however, unsuccessfully cites bad-faith conduct alone to bolster its covenant.[106]  Yet, a bad faith breach of the agreement's express terms is still a breach of the agreement's express terms.[107]

There is no implied covenant in the MDC.

### 4. Fraudulent Transfer Against H&M (Count IV).

Title 6, § 1304(b) of the Delaware Code sets forth eleven factors (or badges) for determining whether there is an "actual intent to hinder, delay or defraud any

---

[103] *Allen v. El Paso Pipeline GP Co., L.L.C.*, 113 A.3d 167, 182–83 (Del. Ch. 2014), *aff'd*, 2015 WL 803053 (Del. Feb. 26, 2015).

[104] *Id.* at 183.

[105] *Dieckman*, 155 A.3d at 367.

[106] *See Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009) ("The implied covenant cannot be invoked to override the express terms of the contract. . . . *General allegations of bad faith conduct are not sufficient.*  Rather, the plaintiff must allege a specific implied contractual obligation and allege how the violation of that obligation denied the plaintiff the fruits of the contract.  Consistent with its narrow purpose, the implied covenant is only rarely invoked successfully." (emphasis added) (citations omitted)).

[107] *See ASB Allegiance Real Est. Fund v. Scion Breckenridge Managing Member, LLC*, 50 A.3d 434, 444–45 (Del. Ch. 2012) ("Notwithstanding the covenant's potentially misleading moniker and decisional references to a culpable mental state, a claim for breach of the implied covenant is a contract claim, requires proof of breach-of-contract elements, and yields contract remedies."), *rev'd on other grounds*, 68 A.3d 665 (Del. 2013).

creator of the debtor[.]"[108]  That Section, in turn, refers to § 1304(a)(1), and "[c]laims for actual fraudulent transfer brought under § 1304(a)(1) must meet the heightened pleading standard of Superior Court Civil Rule 9(b)."[109]  Rule 9(b) requires particularized pleading of the circumstances surrounding the alleged fraud and generalized pleading of the alleged fraudster's knowledge.[110]  Accordingly, to state a fraudulent transfer claim, a plaintiff "must generally plead facts showing intent to defraud with specific supporting facts describing the circumstances of the transfer."[111]

In moving against this claim, H&M contend "Savant meets none of the requirements necessary to establish an actual fraudulent transfer" and cite certain factual circumstances indicating solvency.[112]  All this is beside the point.  At this stage, Savant need not prove an actual fraudulent transfer.  Instead, Savant must show there are material facts in dispute.[113]  It has.

---

[108]  DEL. CODE ANN. tit. 6, § 1304(b) (cross-referencing DEL. CODE ANN. tit. 6, § 1304(a)(1)).

[109]  *Ki-Poong Lee v. So*, 2016 WL 6806247, at *3 (Del. Super. Ct. Nov. 17, 2016).

[110]  Del. Super. Ct. Civ. R. 9(b); *see also Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 207–08 (Del. Ch. 2006) (identifying the "circumstances" that must be pleaded with particularity, which include "the time, place and contents of the false representations" and "what that [alleged fraudster] gained from making the representation), *aff'd sub nom.*, *Trenwick Am. Litig. Tr. v. Billett*, 2007 WL 2317768 (Del. Aug. 14, 2007).

[111]  *Quadrant Structured Prods. Co., Ltd. v. Vertin*, 102 A.3d 155, 198 (Del. Ch. 2014).

[112]  H&M's Mot. for Summ. J., at 43.

[113]  *Id.*

In support of its contention that Humanigen was insolvent when it transferred the benznidazole assets, Savant highlights: (1) a statement by the Court in its August 17, 2020 opinion; (2) a statement by Nomis Bay in Savant's request for admissions; (3) Humanigen's consideration of bankruptcy; (4) Humanigen's financial statements; and (5) Humanigen's inability to pay its obligations, including to its lawyers and board members.[114] Given this record evidence, there is a material fact in dispute—*i.e.*, whether Humanigen was insolvent—that must be developed more thoroughly.[115] As observed, "[t]he Court may, in its discretion, deny summary judgment if it decides, upon examination of the facts presented, that it is desirable to inquire into or develop more thoroughly the facts at trial in order to clarify the law or its application."[116] Accordingly, summary judgment is **DENIED**.

### 4. Breach of Contract (Warrant) Against Humanigen (Count VI).

Savant has alleged that Humanigen breached the terms of a Common Stock Purchase Warrant by not fulfilling its obligation after Savant met the provision's

---

[114] Savant's Br. in Opp'n to Nomis Bay's Mot. for Summ. J., at 10-12 (D.I. 392).

[115] *E.g.¸ Bobcat N. Am., LLC v. Inland Waste Holdings, LLC*, 2019 WL 1877400, at *4 (Del. Super. Ct. Apr. 26, 2019).

[116] *In re Morrow Park Holding LLC*, 2018 WL 2123273, at *2 (Del. Ch. Mar. 28, 2018); *see also McCabe v. Wilson*, 1986 WL 8008, at *2 (Del. Super. Ct. June 26, 1986) ("[S]ound judicial administration may dictate withholding judgment until the whole factual structure stands upon a solid foundation following a plenary trial where proof can be fully developed, questions answered and issues clearly focused.").

requirements.[117]  Savant travels a peculiar path to that claim.

As a first step, Savant narrows Count VI saying it "intends only to pursue its claim related to Humanigen abandoning its performance obligations, which prevented Humanigen from triggering Savant's rights under the Warrant."[118]  It next avers that "[t]he basis for the claim is thus identical to Count [III]."[119]  Savant then, without elaborating further on Count VI, asks the Court to look to the arguments in Count III to support its claim and related opposition to H&M's Motion.[120]  In Count III—which Savant is no longer pursuing—it says Humanigen breached its obligation to develop benznidazole.[121]  And ending this journey, Savant ultimately argues that summary judgment is improper because (a) granting it would violate the prevention doctrine; and (b) Humanigen did not perform diligently under the MDC.  Both arguments fail.

### a. The Prevention Doctrine Does Not Bar H&M's Failure of a Condition Precedent Argument.

Savant argues that Humanigen failed to perform under the contract, causing milestones not to be met, which blocked Savant from receiving milestone

---

[117]  Savant's Second Am. Compl. ¶¶ 127–28.

[118]  Savant's Br. in Opp'n to H&M's Mot. for Summ. J., at 45–46.

[119]  *Id.* at 46.

[120]  *Id.*

[121]  Savant's Second Am. Compl. ¶¶ 113–14.

payments.[122]  In other words, Savant invokes the prevention doctrine.

"[U]nder the prevention doctrine[,] a duty to perform is excused if the other [] party wrongfully prevented the condition from occurring."[123]  The operative language is wrongful prevention because "there is no prevention claim where the contract, in effect, authorizes prevention."[124]  In turn, the central question is whether "the contract allocated the risk of the condition's nonoccurrence[,]" *i.e.*, whether the party had assumed the risk that a condition precedent would not be satisfied.[125] Delaware courts have applied the prevention doctrine's assumption-of-risk exception when the contract (i) uses explicit language to authorize prevention; or (ii) when "contract terms condition the consummation of a transaction upon the approval of the other party, or subject one party to the discretion, satisfaction, or decision of the other party or a third-party."[126]  A contract between "sophisticated parties experienced in their industry, weighs in favor of finding an assumption of risk[.]"[127]

---

[122]  Savant's Br. in Opp'n to H&M's Mot. for Summ. J., at 43.

[123]  *Bobcat*, 2019 WL 1877400, at *6; *see also* RESTATEMENT (SECOND) OF CONTRACTS § 245 cmt. a (AM. L. INST. 1981) (a condition's non-occurrence is excused "where [] lack of cooperation constitutes a breach," including a breach of "a duty imposed by the terms the agreement itself.").

[124]  *Bobcat*, 2019 WL 1877400, at *6 (internal quotation marks omitted).

[125]  *Id.* (citation omitted).

[126]  *Id.* at *7 (citation omitted).

[127]  *Id.* at *8.

The MDC contemplated a risk of nonoccurrence. It provides a milestone table (Section 3.3) and declares, in part, that "[Humanigen] shall pay to [Savant] each of the following one-time milestone payments (the "Milestone Payments") promptly, but in no event later than within fifteen (15) days after the first achievement of the corresponding milestone event, if such milestone is achieved[.]"[128] Plainly, the conditional language itself—that milestone payments are made "if such milestone is achieved"—confirms that there is a risk of the condition's nonoccurrence. And, as both parties are sophisticated operators in this industry, they know FDA approval is a risk assumed, triggering an exception to the prevention doctrine. Accordingly, the prevention doctrine doesn't bar H&M's claim.

### b. The Condition Requiring Humanigen to Perform Diligently Wasn't Met.

The next piece of Savant's opposition concerns a condition precedent. The effect of a condition precedent is a question of contract interpretation, and therefore, of law.[129] The burden is on the party claiming breach to demonstrate that a condition precedent to the underlying duty has been satisfied.[130] A breach-of-contract claim

---

[128] Savant's Mot. to Dismiss Ex. A at § 3.3 (D.I. 156) [hereinafter MDC].

[129] *See, e.g.*, *Casey Emp. Servs., Inc. v. Dali*, 1993 WL 478088, at *4 (Del. Nov. 18, 1993).

[130] *E.g.*, *S'holder Rep. Servs. LLC v. Shire US Holdings, Inc.*, 2020 WL 6018738, at *17 (Del. Ch. Oct. 12, 2020) (explaining burden-shifting in the contractual condition context); *see also Williams Cos., Inc. v. Energy Transfer Equity, L.P.*, 159 A.3d 264, 273 (Del. 2017) ("[O]nce a breach of a covenant is established, the burden is on the breaching party to show that the breach did not contribute materially" to the non-occurrence of a condition. (citing RESTATEMENT (SECOND) OF CONTRACTS § 245 cmt. b)).

anchored to an obligation that is contingent on an unexcused or unsatisfied condition precedent is not cognizable.[131]

H&M argues that once Chemo Research obtained FDA approval, H&M didn't need to perform to the level that Savant demanded.[132] It points to MDC Section 5.3, which defines "Diligent Efforts" to include "level of effort and reasonable standard in the biopharmaceutical industry[.]"[133] Furthermore, it continues, neither party is liable for a performance obligation or breach if "such failure or delay is due to any occurrence beyond the reasonable control of such Party[.]"[134] In opposition, Savant says that, although FDA approval was certainly a hinderance, the Agreement was not limited to the United States.[135] Specifically, it asserts that MDC Section 5.4 provides for the development and commercialization of benznidazole outside of the United States.[136]

But MDC Section 5.4 requires an unambiguous condition precedent to be met:

---

[131] *Cf. Brazen v. Bell Atl. Corp.*, 1997 WL 153810, at *2 (Del. Ch. Mar. 19, 1997) ("[The] claim is not dependent on occurrence of [a] condition precedent, and is, therefore, ripe for adjudication."); RESTATEMENT (SECOND) OF CONTRACTS § 235 ("When performance of a duty under a contract is *due* any non-performance is a breach." (emphasis added)).

[132] H&M's Br. in Opp'n to Savant's Partial Mot. for Summ. J., at 23.

[133] *Id.* at 24.

[134] *Id.* at 28; MDC § 15.1.

[135] Savant's Br. in Opp'n to H&M's Mot. for Summ. J., at 45.

[136] MDC § 5.4 ("Development, Commercialization outside the United States").

As soon as reasonably practicable but in any event within twelve (12) months of the date of submission of an NDA for the Product to the FDA, [Humanigen] shall conduct and complete, and deliver a complete copy of, a feasibility analysis of conducting development and commercialization of the Product in countries currently in the European Union and in Japan.[137]

Despite that, Savant insists that "[o]n June 25, 2017, Humanigen achieved the first milestone event, acceptance of an NDA for benznidazole[.]"[138] The record, however, including the milestone schedules, belies Savant's contentions.[139] Savant's confusion of the Investigational New Drug (IND) for the New Drug Application ("NDA") dooms its defense. Because the condition preceding Humanigen's performance was not met, Humanigen was not required to perform. Accordingly, H&M's Motion for Summary Judgment on Count VI (Breach of Contract) is **GRANTED**.

## B. H&M'S SUMMARY JUDGMENT MOTION AGAINST SAVANT'S BANKRUPTCY PROCEEDING COUNTERCLAIMS.

H&M insists that the Court should grant summary judgment on all of Savant's Bankruptcy Proceeding Counterclaims because Savant did not reassert these claims

---

[137] *Id.*

[138] Savant's Mot. for Summ. J., at 44.

[139] H&M Mot. for Summ. J. Ex. 9 at 218 (Deposition of Reimar C. Bruening, Ph.D., Jan. 11, 2021) ("But I think the most important part to capitalize on what Humanigen had at the time after the Chemo NDA was granted was actually their process.").

after the conclusion of the bankruptcy action.[140]  Says H&M,  "[b]y not reasserting

the claims in Chancery Court, Savant has waived them and allowing Savant to

pursue them now would amount to allowing claim splitting."[141]  So, at bottom,

H&M's argument against all six claims is that they are no longer part of the litigation

and that allowing them to survive now would be condoning the sort of claim splitting

Delaware courts won't tolerate.[142]

## 1. Savant's Counterclaims are Still Part of the Immediate Case.

H&M's argument that the counterclaims are no longer part of the proceeding

rests, in part, on an email exchange between counsel in which H&M demanded a

legal citation to defend against its position that the counterclaims were no longer in

the case.[143]   But, though H&M contends that "Savant never reasserted these

counterclaims after this action was remanded," it answered these counterclaims on

February 12, 2018.[144]   Too, Savant's counterargument is persuasive.   Savant

contends that "[c]ourts [] have considered [H&M's waiver argument and] have

---

[140]  Savant's Mot. for Partial Summ. J., at 3–4; Savant's Br. in Opp'n to H&M's Mot. for Summ. J., at 45.

[141]  Savant's Mot. for Partial Summ. J., at 3–4; Savant's Br. in Opp'n to H&M's Mot. for Summ. J., at 45.

[142]  H&M's Mot. for Summ. J., at 45.

[143]  *Id.* at 45, Ex. 51.

[144]  *Id.* at 45; *see* H&M's Answer to Savant's Countercls. (D.I 10).

rejected it because an answer and counterclaims serve different purposes, and like claims raised in a pleading, counterclaims remain part of the case until dismissed."[145] As support, Savant turns to the federal district court's decision in *Hughes v. Abell*.[146] There, the court confronted a similar issue concerning counterclaims.[147] And there, the court rejected the precise waiver argument H&M makes here, finding that the "[defendant]'s later filing did not abandon the counterclaims."[148] H&M offers little—and certainly, no good—authority for shying from this view.[149] Savant's counterclaims are still part of the immediate case.

### 2. Savant's Bankruptcy Proceeding Counterclaims Do Not Evince Claim Splitting.

H&M argues that the Court should grant it summary judgment because Savant

---

[145] Savant's Br. in Opp'n to H&M's Mot. for Summ. J., at 46–47; *see generally Hughes v. Abell*, 867 F. Supp. 2d 76 (D.D.C. 2012).

[146] Savant's Br. in Opp'n to H&M's Mot. for Summ. J., at 46–47 (citing *Hughes*, 867 F. Supp. 2d at 91).

[147] *Hughes,* 867 F. Supp. 2d at 91.

[148] *Id.*

[149] Instead, H&M cites to *J.L. v. Barnes*, 33 A.3d 902, 918 (Del. Super. Ct. 2011) and *Balin v. Amerimar Realty Co.*, 1995 WL 170421, at *4 (Del. Ch. April 10, 1995) for the proposition that claim splitting is inappropriate. But as the Court explains below, claim splitting hasn't occurred here. Additionally, H&M cites to *Saudi Basic Indus. Corp. v. Mobil YanbuPetrochem. Co.* 2003 WL 22048238, at *4 (Del. Super. Ct. Sept. 2, 2003) for the proposition that, since Savant's 30(b)(6) witness could not properly answer questions about the bankruptcy counterclaims, his response should bind Savant. But the facts in *Saudi Basic Indus. Corp.* are distinguishable. There, the issue was over the 30(b)(6) witness's complete reversal of position and the subsequent effect that reversal had on discovery. *Id.* at *3-4.

did not reassert these claims after the conclusion of the bankruptcy action.[150] To reiterate, H&M's specific contention is "[b]y not reasserting the claims in Chancery Court, Savant has waived them and allowing Savant to pursue them now would amount to allowing claim splitting."[151]

"Claim splitting occurs when a plaintiff sues the same defendant in different courts on different causes of action arising out of a common underlying nucleus of facts."[152] Delaware courts ask a tripartite question to determine whether claim splitting has occurred: "(1) is there a prior action pending elsewhere; (2) in a court capable of doing prompt and complete justice; (3) involving the same parties and the same issues?"[153]

Here, the bankruptcy action was remanded to the Superior Court, and so these counterclaims are not pending elsewhere. The Court, sitting here as both a court of law and court of equity, has the power to rule on the entire matter. And, in some arrangement or another, the parties in the previous bankruptcy case, previous Chancery case, and current Superior Court case, are all the same litigants and litigating over the same issues of fact. These claims have been part of the litigation,

[150] H&M's Mot. for Summ. J., at 45.

[151] *Id.*

[152] *O'Rangers v. Cadia Rehab. Silverside*, 2019 WL 1531520, at *6 (Del. Super. Ct. Apr. 8, 2019).

[153] *LG Elecs., Inc. v. InterDigit. Commc'ns, Inc.*, 114 A.3d 1246, 1252 (Del. 2015).

have been answered by H&M, and thus do not constitute split claims.[154]

### 3. Savant's Bankruptcy Proceeding Counterclaim as to Breach of the Security Agreement Fails as a Matter of Law (Count V).

Having found Savant's bankruptcy counterclaims alive, the Court turns to the counterclaim based on breach of the parties' Security Agreement (the "SA").[155] Deploying SA Section 4, Savant contends Humanigen breached the SA by assigning SA-defined collateral to Madison despite Humanigen's alleged duty to retain ownership of those assets.[156]

Savant overlooks that neither the SA nor the MDC prohibits assignments. Under the SA, Humanigen may assign collateral as long as its assignment comports with the MDC's terms.[157] SA Section 4, too, acknowledges this.[158] And, as the Court previously held, the MDC permits assignments like the one at issue here.[159]

---

[154] H&M's Mot. for Summ. J., at 45; *see also* H&M's Answer to Savant's Countercls.

[155] *See generally* Ex. 13 (D.I. 410).

[156] *See id.* § 4.

[157] *See id.* § 5 ("[Humanigen] shall not sell, lease or otherwise dispose of . . . any [c]ollateral, except . . . in accordance with the terms of the MDC Agreement in connection with any sublicense or assignment thereunder . . . .").

[158] *See id.* § 4 ("[Humanigen] . . . shall maintain (*other than in accordance with [SA] Section 5*) . . . title to each item of [c]ollateral . . . ." (emphasis added)).

[159] MDC § 15.2 ("This Agreement may be assigned by [Humanigen] in whole or in part to any [t]hird [p]arty without the consent of [Savant]."); *see Humanigen*, 238 A.3d at 205, 207 ("Humanigen was . . . within its rights under . . . MDC [§ 15.2] to assign the contract to Madison . . . . The provisions of the MDC permitted the assignment Savant challenges."). According to Savant, that ruling was partial motivation for crafting the footnote concession in the first place. Savant's Mot. for Rearg. at 1.

That finding is law of the case and Savant offers no reason to revisit it.[160]

Accordingly, the assignment cannot support a breach of the SA.

Taken together with the procedural rulings, H&M's motion against the Bankruptcy Proceeding Counterclaims is **GRANTED** in part, and **DENIED**, in part.

### C. NOMIS BAY'S SUMMARY JUDGMENT MOTION AGAINST SAVANT'S FRAUDULENT TRANSFER CLAIM (COUNT IV).

Against the notion that it can be the target of a fraudulent transfer claim, Nomis Bay argues that Delaware courts require the defendant in a fraudulent transfer action either be the transferor (Humanigen) or the transferee (Madison).[161] In opposition, Savant contends that Humanigen made the transfer to benefit Nomis Bay, roping it into a fraudulent transfer claim.[162] Savant further asserts that "Nomis Bay does not need to be a transferor or transferee to be liable under Delaware law; it simply must be an intended beneficiary of a fraudulent transfer."[163] In support of its assertion that Nomis Bay is the beneficiary, Savant states that "70% of the spoils

---

[160] *See Del. Dep't of Nat. Res. & Env't Control v. Food & Water Watch*, 246 A.3d 1134, 1138– 39 (Del. 2021) ("The law of the case is established when a specific legal principle is applied to an issue presented by facts [that] remain constant throughout the litigation. [It] requires that issues already decided by the same court . . . be adopted without relitgation . . . . In more simplified terms, the law of the case doctrine operates as a form of intra-litigation *stare decisis*." (internal quotation marks and citations omitted)).

[161] Nomis Bay's Mot. for Summ. J., at 12.

[162] Savant's Br. in Opp'n to Nomis Bay's Mot. for Summ. J., at 17.

[163] *Id.* at 19 (citing *In re Direct Response Media, Inc.*, 466 B.R. 626, 654 (Bankr. D. Del. 2012)).

of any lawsuit [are given] to Nomis Bay[.]"[164]  A party's beneficiary status in the fraudulent transfer context is a question of law, making summary judgment a possibility here.[165]

A non-transferor or non-transferee can be liable for fraudulent transfer if it is a beneficiary of the fraudulent transfer.[166]  To detect beneficiary status, this Court engages the same three-factor test bankruptcy courts use.[167]  The Court must determine: (1) whether the benefit was received by the beneficiary; (2) whether the benefit is quantifiable; and (3) whether the benefit is "accessible to the beneficiary."[168]  Under this test (with its requirement that all three factors are present), Nomis Bay is not a beneficiary.

First, Nomis Bay hasn't actually received a benefit.[169]  Though Savant believes that Nomis Bay is set to receive "70% of the spoils,"[170] future judgments

[164] *Id.*

[165] *Pike Creek Recreational Servs., LLC v. New Castle Cty.*, 238 A.3d 208, 213 (Del. Super. Ct. 2020) ("[A] matter should be disposed of by summary judgment whenever only a question or questions of law remain. . . .").

[166] DEL. CODE ANN. tit. 6, § 1308 (2020); *In re Green Field Energy Servs. Inc. v. Moreno*, 2018 WL 1116374, at *1 (Bankr. D. Del. Feb. 27, 2018).

[167] *In re Green Field Energy Servs. Inc.*, 2018 WL 1116374, at *1.

[168] *Id.*

[169] *See* DEL. CODE ANN. tit. 6, § 1308; *In re Green Field Energy Servs. Inc.*, 2018 WL 1116374, at *1.

[170] Savant's Br. in Opp'n to Nomis Bay's Mot. for Summ. J., at 19.

are not absolute. Second, and relatedly, these "spoils" are far from certain, and thus not quantifiable. So, because two of three factors have not been satisfied, the Court need not address the third. Accordingly, Nomis Bay does not meet the definition of a beneficiary and as such cannot be liable for fraudulent transfer. Nomis Bay's Motion for Summary Judgment on Count IV of Savant's Complaint is **GRANTED**.

## D. SAVANT'S SUMMARY JUDGMENT AGAINST H&M'S SECOND AMENDED COMPLAINT.

### 1. Breach and/or Anticipatory Breach of MDC Section 4.8 (Count I).

H&M seeks to set off the $2 million of milestone payments it owes to Savant against the $3.8 million H&M believes Savant owes it.[171] H&M points to MDC Section 4.8 as the operative contractual section allowing for such credit.[172] That section provides two options for H&M to obtain compensation from Savant. The first is in the form of a cash payment, requiring an invoice. The second is to offset its compensation against future payments.[173] Savant argues that H&M's claim here must fail because there are two condition precedents that Humanigen did not satisfy.[174] First, Savant alleges Humanigen never sent a *valid* invoice. And second,

---

[171] H&M's Second Am. Compl. ¶¶ 141–50; H&M's Br. in Opp'n to. Savant's Partial Mot. for Summ. J., at 29.

[172] H&M's Br. in Opp'n to Savant's Partial Mot. for Summ. J., at 29.

[173] MDC § 4.8.

[174] Savant's Mot. for Partial Summ. J., at 21.

Savant alleges Section 4.8 is only triggered if the Acquired Assets[175] are insufficient or inadequate.[176]

"The proper construction of any contract . . . is purely a question of law."[177] The goal of contract interpretation "is to fulfill the parties' expectations at the time they contracted."[178] "But because Delaware adheres to an objective theory of contracts," the Court's interpretation must be intelligible to an "objective, reasonable third party."[179] To that end, the Court construes "clear and unambiguous terms according to their ordinary meaning."[180] Ambiguity exists only if the disputed

---

[175] MDC § 2.1 (defining Acquired Assets).

[176] Mots. Hr'g Tr., Mar. 18, 2021, at 24–25 ("[Savant's counsel:] 'Well, Section 4.8 does so inferentially by its preparatory language which tells us that the expenditures have to be related to the insufficiency or inadequacy of the assets. The plain language reading of that is that there has to be at least a claim that that is so. In other words, it's not enough to say we spent $9.2 million with overages of $3.8 million period. Because that's irrelevant under the terms of the MDC. What's clear is you have to somehow relate that to the insufficiency or inadequacy of the assets. And that simply didn't happen.'").

[177] *Exelon Generation*, 176 A.3d at 1266–67 (quoting *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992)).

[178] *Leaf Invenergy Co. v. Invenergy Renewables LLC*, 210 A.3d 688, 696 (Del. 2019) (internal quotation marks omitted).

[179] *Id.* (alteration and internal quotation marks omitted).

[180] *Id.* (internal quotation marks omitted); *see Salamone v. Gorman*, 106 A.3d 354, 368 (Del. 2014) ("Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language." (internal quotation marks omitted)).

language is "fairly or reasonably susceptible to more than one meaning."[181] Summary judgment cannot be granted if a disputed contract term is ambiguous.[182]

Savant's first argument can't command summary judgment because Savant can't point to MDC language defining "invoices and reasonable supporting details."[183] Too, Savant's claim that Section 4.8 wasn't triggered by the insufficiency or inadequacy of the Acquired Assets lacks support beyond its assertion.[184] Moreover, H&M's response that the MDC does not explicitly state when an overage is the result of an insufficiency or inadequacy of the Acquired Assets is left unanswered by Savant.[185] The Court can't resolve "two equally reasonable, but conflicting, interpretations" of contract language on summary

---

[181] *Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012).

[182] *See, e.g.*, *GMG Cap. Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 783 (Del. 2012) ("This Court has long upheld awards of summary judgment in contract disputes where the language at issue is clear and unambiguous. . . . But, where reasonable minds could differ as to the contract's meaning, a factual dispute results and the fact-finder must consider admissible extrinsic evidence. In those cases, summary judgment is improper." (citations omitted)).

[183] Savant's Reply Br., at 19 (D.I. 408) (citing MDC § 4.8).

[184] Savant simply states that "the plain language of Section 4.8 demonstrates that Savant has no liability to Plaintiff unless (1) the overages are due [because] of an insufficiency in the Benz Assets (as opposed [to] Humanigen's poor management)[.]" Then Savant exclusively argues its second contention based on Section 4.8—that Humanigen didn't provide an invoice with reasonable supporting detail. Savant's Mot. for Summ. J., at 23. In its response and reply briefs, Savant continues exclusively arguing its second contention (lack of a proper invoice) and does not re-state its first contention until the motions' hearing. Mots. Hr'g Tr., March 18, 2021, at 24:22-25:12; *see also* Savant's Br. in Opp'n to H&M's Mot. for Summ. J.; Savant's Reply Br.

[185] H&M's Br. in Opp'n to Savant's Mot. for Summ. J., at 19.

-39-

judgment.[186]   In light of H&M's reasonable interpretation of the contractual language, and Savant's failure to effectively forfend H&M's reasonable interpretation, summary judgment must be **DENIED**.[187]

### 2. Breach of Contract – Failure to Cooperate in Investigation (Count V).

H&M alleges Savant violated MDC Sections 7.12 and 10.1 by not cooperating in its investigation of the "apparent misappropriation of the Estani Data by Chemo Research."[188]   Savant claims that it had no duty to cooperate in an investigation concerning Estani Data because Section 7.12 of the MDC requires such cooperation only when Company IP is at issue; Estani Data, Savant maintains, was an Acquired Asset, not Company IP.[189]

But Savant neglects to respond to the second part of H&M's Count V claim—breach of MDC Section 10.1.[190]   Specifically, H&M states that "[w]hen information requests were made under Section 10.1 for materials, Savant rebuffed them."[191]   In

---

[186] *GMG Cap.*, 36 A.3d at 784.

[187]   *Id.* ("We reaffirm that, in a dispute over the proper interpretation of a contract, summary judgment may not be awarded if the language is ambiguous and the moving party has failed to offer uncontested evidence as to the proper interpretation.").

[188]   H&M's Second Am. Compl. ¶ 178.

[189]   Savant's Mot. for Partial Summ. J., at 42.

[190]   *Id.* at 41-44.

[191]   H&M's Br. in Opp'n to Savant's Mot. for Partial Summ. J., at 50 (citing H&M's Mot. to Compel the Produc. of Docs. (D.I. 39)).

addition to not addressing Section 10.1 in its Motion for Partial Summary Judgment, Savant also fails to mention Section 10.1 in its Reply Brief.[192]

"[S]ummary judgment may not be granted under Rule 56 unless there are no material issues of fact, and the moving party initially bears the burden of showing that none are present."[193]   Savant, though, presents no law or facts addressing the latter part of H&M's Count V claim, namely MDC Section 10.1.[194]   Accordingly, Savant has failed to meet its initial burden, and its Motion for Summary Judgment on this claim is therefore **DENIED**.

### 3. Fraudulent Inducement – Representations Relating to Assets and Contracts (Count VI).

Count VI alleges Savant "made false representations to [Humanigen] concerning the status, quality and extent of testing and development required of the Product as well [as] the adequacy of other Acquired Assets."[195]   Here, H&M alleges Humanigen relied on Savant's misrepresentations and was induced into entering the MDC because of these misrepresentations.[196]   In response, Savant claims that: (1) it

---

[192]   Savant's Reply Br., at 23.

[193]   *Moore*, 405 A.2d at 680.

[194]   H&M declares that "Humanigen does not intend to pursue an affirmative breach of Section 7.12 at trial. Rather, Humanigen limits its argument to the fact that both Section 7.5 and 7.12 limit Savant's ability to recover anything in New Jersey." H&M's Br. in Opp'n to Savant's Mot. for Partial Summ. J., at 50. As such, the Court expects this claim to be limited to Breach of MDC § 10.1.

[195]   H&M's Second Am. Compl. ¶ 181.

was not making guarantees or representations about the benznidazole assets; (2) Humanigen acquired the Assets on an "as is, where is" basis; and (3) Humanigen failed to conduct due diligence about the issues it raised in its claim.[197] Additionally, Savant suggests this claim should fail because H&M cannot prove scienter and the claim is barred by an integration clause.[198] Resolving this issue requires the Court to determine (i) whether the MDC's integration clause would bar H&M's claim; and (ii) whether there are no genuine issues of material fact from which H&M could show scienter.

### a. The MDC Does Not Bar Fraud Claims.

Delaware "abhors" fraud.[199] But Delaware also promotes freedom of contract "as a matter of fundamental public policy."[200] Allowing both to coexist, Delaware law permits sophisticated contract parties to eliminate the risk of future claims of fraud or misrepresentation "by contractually specifying what representations the

---

[196] *Id.* ¶¶ 185–86.

[197] Savant's Mot. for Partial Summ. J., at 28-31; *see also* MDC § 9.9.

[198] Savant's Mot. for Partial Summ. J., at 37, 39.

[199] *E.g.*, *Freeman v. Topkis,* 40 A. 948, 949 (Del. Super. Ct. 1893) ("The law abhors fraud of every nature and description, and will un-kennel and expose it whenever it can be found, no matter how many or what may be the character of the disguises which surround it."); *ABRY Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1058 (Del. Ch. 2006) ("[T]his court consistently has respected the law's traditional abhorrence of fraud in implementing this reasoning.").

[200] *NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 29 (Del. Ch. 2009).

parties are and are not making and relying upon."[201] But, to preclude remedies for so-called "extra-contractual" fraud—a fraud claim based on statements that are not memorialized in the subject agreement—"the intent to preclude reliance on extra-contractual statements must emerge clearly and unambiguously from the contract."[202] Only if the contract's terms, "when read together, can be said to add up to a clear anti-reliance clause by which the [claimant] has contractually promised that it did not rely on statements outside the contract's four corners" will a court bar a fraud claim based on extra-contractual representations.[203]

As its sole textual support for an intent to disclaim the fraudulent inducement count, Savant cites the MDC's generic integration clause.

> There are no covenants, promises, agreements, warranties, representations, conditions or understandings, either oral or written, between the Parties with respect to the subject matter of this Agreement other than as are set forth in this Agreement, the other Transaction Documents, and the surviving provisions of the Letter of Intent set forth above.[204]

---

[201] *Infomedia Grp., Inc. v. Orange Health Sols., Inc.*, 2020 WL 4284087, at *4 (Del. Super. Ct. July 31, 2020); *see FdG Logistics LLC v. A&R Logistics Holdings, LLC*, 131 A.3d 842, 858 n.48 (Del. Ch. 2016) (observing that parties may agree to "foreclose reliance" on un-memorialized representations consistent with Delaware's public policy against fraud and collecting authority), *aff'd*, 2016 WL 5845786 (Del. Sept. 30, 2016); *see also RAA Mgmt., LLC v. Savage Sports Holdings, Inc.*, 45 A.3d 107, 117 (Del. 2012) (explaining the "extra-contractual" vs. contractual fraud distinction and observing that the former may be disclaimed but the latter may not).

[202] *Kronenberg v. Katz*, 872 A.2d 568, 593 (Del. Ch. 2004).

[203] *Id.*

[204] MDC § 15.13 ("Entire Agreement; Amendments").

-43-

It is true that, when combined with other provisions, integration clauses have been found one part of a larger component group that may together assemble valid anti-reliance language.[205] But it is well-established that "[a] standard integration clause, without more, is insufficient to disclaim all reliance on extra-contractual statements."[206] That is because an integration clause "simply operates to police the variance of the agreement by parol evidence."[207] In only defining the agreement, an integration clause does not amount to an "explicit and comprehensive" anti-reliance provision through which the parties "forthrightly affirm that they are not relying upon any representation or statement of fact not contained [in the contract]."[208] As a result, § 5.13—which is unaccompanied by any additional evidence of anti-reliance—doesn't bar the fraudulent inducement claim.[209]

---

[205] *E.g.*, *Prairie Cap. III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 51 (Del. Ch. 2015) (finding an integration clause "combine[d]" with other disclaimer language to generate a valid anti-reliance provision).

[206] *McDonald's Corp. v. Easterbrook*, 2021 WL 351967, at *6 (Del. Ch. Feb. 2, 2021); *see also Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 140 (Del. Ch. 2009) ("An anti-reliance provision must be explicit, and a standard integration clause is not enough.").

[207] *Kronenberg*, 872 A.2d at 592.

[208] *Anschutz Corp. v. Brown Robin Cap., LLC*, 2020 WL 3096744, at *13 (Del. Ch. June 11, 2020) (alteration in original) (internal quotation marks omitted).

[209] *E.g.*, *Black Horse Cap.*, *LP v. Xstelos Holdings, Inc.*, 2014 WL 5025926, at *22 (Del. Ch. Sept. 30, 2014) ("The presence of a standard integration clause, alone, which does not contain explicit anti-reliance representations and which is not accompanied by other contractual provisions demonstrating with clarity that the plaintiff had agreed that it was not relying on facts outside the contract, will not suffice to bar fraud claims." (quoting *Kronenberg*, 872 A.2d at 593)).

What is more, Savant doesn't take the Court to the specific provisions that, in conjunction with the MDC's integration clause, would overcome the presumption that all transaction-based fraud claims are viable.[210]  On that, Savant's effort to use MDC Section 9.9's "as is, where is" language as a surrogate anti-reliance provision misses the mark.  That language falls woefully short of an explicit promise or acknowledgement by H&M that it would not rely on extra-contractual statements and thus would forfeit all its extra-contractual fraud claims.[211]

As a last resort, Savant cites *Great Lakes Chemical Corp. v. Pharmacia Corp.* for the proposition that, because Savant and Humanigen are "two sophisticated corporations" who executed a contract with negotiated terms, H&M is precluded from bringing fraud claims.[212]  But there are at least four problems with this reasoning.

First and most obviously, the claims in *Great Lakes Chemical Corp.* were "explicitly precluded" by enforceable anti-reliance language.[213]  Here, as explained,

---

[210]  Savant's Mot. for Partial Summ. J., at 39.

[211]  *E.g.*, *Infomedia*, 2020 WL 4384087, at *5–7 (analyzing applicable case law and explaining the need for a promise or acknowledgement to complete the anti-reliance equation).

[212]  Savant's Reply Br., at 17 (citing *Great Lakes Chem. Corp. v. Pharmacia Corp.*, 788 A.2d 544, 556 (Del. Ch. 2001)).

[213]  *See Great Lakes*, 788 A.2d at 556 ("To allow Great Lakes to assert, under the rubric of fraud, claims that are explicitly precluded by contract, would defeat the reasonable commercial expectations of the contracting parties and eviscerate the utility of written contractual agreements. For those reasons, I conclude that in these circumstances, Delaware law permits explicit contract

the MDC doesn't explicitly preclude anything. Second, the question of whether a contract contains valid anti-reliance language doesn't hinge just on the parties' identities. To be sure, level of sophistication is an important factor in determining whether an agreement validly has disclaimed certain frauds.[214] But ultimately, the dispositive question is whether the agreement between those sophisticated parties contains *language* that clearly amounts to a disclaimer of extra-contractual fraud claims. The MDC, however, has no anti-reliance language. Third, Savant's "sophisticated party" refrain echoes both ways. If Savant—a sophisticated party— wished for certain fraud to be barred, it could have drafted the agreement that way. It didn't. A sophisticated party cannot use litigation to extract contractual protections it failed to negotiate at the bargaining table.[215] And last, Savant

---

disclaimers to bar Great Lakes' fraud claims. Because the parties' contractually agreed-to disclaimers extinguish the fraud claims being asserted here, Counts I and III will be dismissed.").

[214] *E.g.*, *ABRY*, 891 A.2d at 1061–62 (cautioning in the anti-reliance context that "the common law ought to be especially chary about relieving sophisticated business entities of the burden of freely negotiated contracts"); *but see Squid Soap*, 984 A.2d at 140 (observing that "[s]ophisticated parties frequently bargain for anti-reliance provisions" but then concluding more broadly that "Delaware permits *parties* to disclaim reliance on representations outside of the written agreement" (emphasis added)); *but see also* Stephen M. Haas, *Contracting Around Fraud Under Delaware Law*, 10 DEL. L. REV. 49, 75–79 (2008) (identifying a "sophisticated party" requirement in Delaware's fraud jurisprudence and summarizing applicable case law, but also noting that "none of [the Delaware] cases state just how 'sophisticated a party must be'" and questioning case law that protected "individuals" from fraud disclaimers while failing to measure the level of sophistication that individuals—rather than entities—often possess).

[215] *See W. Willow–Bay*, 2007 WL 3317551, at *9 ("The presumption that the parties are bound by the language of the agreement they negotiated applies with even greater force when the parties are sophisticated entities that have engaged in arms-length negotiations."), *aff'd*, 2009 WL 4154356 (Del. Nov. 24, 2009); *see also NAMA Holdings, LLC v. World Mkt. Ctr. Venture, LLC*, 948 A.2d 411, 419 (Del. Ch. 2007) ("Contractual interpretation operates under the assumption that the

-46-

overlooks that, even with valid anti-reliance language, not all fraud claims can be disclaimed. Anti-reliance and similar language is ineffective against knowingly false representations that are memorialized in an agreement.[216]

Fraud claims aren't barred by the MDC.

### b. Savant's Scienter is a Fact Issue.

Under Delaware law, fraudulent inducement and common law fraud have the same elements.[217] Those elements are:

(i) a false representation, usually one of fact, made by the defendant;

(ii) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth;

(iii) an intent to induce the plaintiff to act or refrain from acting;

(iv) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and

(v) damage to the plaintiff as a result of such reliance.[218]

---

parties never include superfluous verbiage in their agreement, and that each word should be given meaning and effect by the court."), *aff'd*, 2008 WL 571543 (Del. Mar. 4, 2008).

[216] *E.g.*, *RAA*, 45 A.3d at 117 ("[F]raud claims based on representations *outside* the agreement [] *can* be disclaimed through non-reliance language[, but] fraud claims based on 'false representation[s] of fact made *within* the agreement itself' [] cannot be disclaimed." (emphasis and fourth alteration in original) (quoting *ABRY*, 891 A.2d at 1059)); *see Squid Soap*, 984 A.2d at 137–38 ("Because of Delaware's strong public policy against intentional fraud, a knowingly false contractual representation can form the basis of a fraud claim, regardless of the degree to which the agreement purports to disclaim tort remedies."); *Surf's Up Legacy Partners, LLC v. Virgin Fest, LLC*, 2021 WL 117036, at *12 & n.143 (Del. Super. Ct. Jan. 13, 2021) (same and collecting authority).

[217] *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, 2018 WL 6311829, at *31 (Del. Ch. Dec. 3, 2018).

[218] *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983) (formatting added).

"Under Delaware law, scienter can be proven by establishing that the defendant acted with knowledge of the falsity of a statement or with reckless indifference to its truth."[219] Additionally, "[t]o prove scienter, a plaintiff need not produce direct evidence of the defendant's state of mind. [Instead, c]ircumstantial evidence may often be the principal, if not the only, means of proving bad faith."[220] But, "when an ultimate fact to be determined is one of motive, intention or other subjective matter, summary judgment is ordinarily inappropriate."[221] Here, the disputed record contains multiple facts on which a scienter argument could be based.[222] Accordingly, Savant's scienter is a factual question that can't be resolved now.

In sum, the integration clause is not an absolute bar to the fraudulent inducement claim. Issues of material fact exist as to what Humanigen knew or should have known and to Savant's scienter. And so, Savant's Motion for Summary Judgment on Count VI (Fraudulent Inducement) must be **DENIED**.

---

[219] *In re Wayport, Inc. Litig.*, 76 A.3d 296, 326 (Del. Ch. 2013).

[220] *Deloitte LLP v. Flanagan*, 2009 WL 5200657, at *8 (Del. Ch. Dec. 29, 2009) (internal quotation marks and citation omitted).

[221] *LVI Grp. Invs., LLC v. NCM Grp. Holdings,* LLC, 2019 WL 7369198, at *22 (Del. Ch. Dec. 31, 2019) (alteration and internal quotation marks omitted).

[222] *See* H&M's Br. in Opp'n to Savant's Mot. for Partial Summ. J. Ex. 2 at 388–89 (Deposition of Scott Freeman, M.D., Oct. 30, 2020); *Id.* at Ex. 17 at 21–23 (Deposition of Scott Freeman, M.D., Nov. 16, 2020).

## 4. Fraudulent Inducement Concerning the License of Dr. Estani's Data (Count VII).

H&M alleges that Savant concealed material information concerning the Data License Agreement and Dr. Estani's desire to auction his data to the highest bidder.[223] Against this, Savant claims that Humanigen was made aware of and knew about Dr. Estani's susceptibility to financial incentives and that Chemo was attempting to obtain Dr. Estani's data.[224] Specifically, Savant alleges Humanigen learned Instituto de Efectividad Clínica y Sanitaria ("IECS") was planning on challenging the Data License Agreement months before the MDC was executed.[225]

What's the undergirding of Savant's argument? It's one March 7, 2016 email propped up as confirmation that Humanigen knew or should have known about the Estani Data exclusivity issue.[226] Savant insists that Humanigen had the March 7th email in its possession, showing actual or constructive knowledge of Dr. Estani and the data exclusivity issues.[227] But Savant resolve on this erodes when it tells the

---

[223] H&M's Second Am. Compl. ¶ 184.

[224] Savant's Mot. for Partial Summ. J., at 33.

[225] *Id.* at 34.

[226] *Id.* at 4–5.

[227] *Id.* at 4.

Court, "[t]he March 7[, 2016] email *was likely* in Humanigen's possession before the execution of the MDC."[228]

So, Savant averred that Humanigen had this email in its possession, only to—in almost the next breath—concede that it cannot confirm whether the email was actually in Humanigen's possession.[229] This inconsistency alone demonstrates that there are facts in dispute, rendering summary judgment inappropriate. Accordingly, Savant's Motion for Summary Judgment on Count VII (Fraudulent Inducement) is **DENIED**.

### E. SAVANT'S PARTIAL SUMMARY JUDGEMENT MOTION ON ITS BANKRUPTCY PROCEEDING COUNTERCLAIMS: BREACH OF CONTRACT – SECTION 3.3(A) OF THE MDC – FIRST AND SECOND MILESTONE PAYMENTS (COUNTS I AND II).

According to Savant, H&M is not entitled to offset its milestone payments and, even if H&M could prove it is entitled to offset the milestone payments, that's a question for trial.[230] But then, quizzically, Savant says that regardless of how the Court would rule on that offset question, Savant is entitled to its payment now.[231]

As support for this, Savant cites to *Fleet National Group., Inc. v. Advanta Corp.*, arguing a future offset does not bar the awarding of the sum a party is

---

[228] *Id.* at 10 (emphasis added).

[229] *Id.* at 4, 10.

[230] Savant's Mot. for Partial Summ. J., at 45.

[231] *Id.*

otherwise entitled to receive.[232]  But, in *Fleet National*, the Court of Chancery found the party "made no serious effort to support that offset claim."[233]  While here, H&M has raised a factual issue about how the contract should be interpreted.  And here, the underlying claim shares the same factual issues as Savant's Count VI[234] (Breach of Contract) and H&M's Count I[235] (Breach of MDC Section 4.8).  As to both of those, the Court has found that a factual issue exists concerning whether milestone payments can be offset and denied summary judgement.  So, summary judgment on Savant's Counterclaims I and II must likewise be **DENIED**.

## IV.  CONCLUSION

As a final tally of the dispositions of the parties' several motions:

- Savant's Motion for Summary Judgment as to Counts I (Breach), Count V (Breach), Count VI (Fraudulent Inducement), and Count VII (Fraudulent Inducement) of H&M's Second Amended Complaint is **DENIED**;

- Savant's Motion for Summary Judgment as to Counterclaims I (Breach) and II (Breach) of Savant's Bankruptcy Counterclaims is **DENIED**;

---

[232]  2001 WL 1333405, at *14 (Del. Ch. Oct. 15, 2001).

[233]  *Id.*

[234]  In its Opposition Brief to H&M's Motion for Summary Judgment, Savant narrows Count VI, making "[t]he basis for the claim . . . identical to Count 3." Savant's Br. in Opp'n to H&M's Mot. for Summ. J., at 45–46.

[235]  Savant opposed H&M's Count I claim arguing that because Humanigen did not provide it with an invoice containing "reasonable supporting details[,]" Savant could not adequately choose between its two potential options for receiving compensation, and thus Humanigen allegedly breached MDC § 4.8. Savant's Reply Br., at 19 (citing MDC § 4.8); Savant's Br. in Opp'n to H&M's Mot. for Summ. J., at 30.

- Humanigen's Motion for Summary Judgment as to Count I (Declaratory Judgment) is **GRANTED**.

- Humanigen's Motion for Summary Judgment as to Count II (Declaratory Breach) of Savant's Second Amended Complaint is **DENIED** as moot and the claim is **DISMISSED**.

- Humanigen's Motion for Summary Judgment as to Count III (Breach) is **GRANTED**.

- Humanigen's Motion for Summary Judgment as to Count IV (Fraudulent Transfer) of Savant's Second Amended Complaint is **DENIED**.

- Humanigen's Motion for Summary Judgment as to Count VI (Breach) of Savant's Second Amended Complaint is **GRANTED**.

- Humanigen's Motion for Summary Judgment as to Savant's Bankruptcy Counterclaims is **GRANTED**, in part (*i.e.*, Counterclaim V), and **DENIED**, in part (*i.e.*, Counterclaims I–IV, VI).

- Nomis Bay's Motion for Summary Judgment as to Count IV (fraudulent transfer) of Savant's Second Amended Complaint is **GRANTED**.

**IT IS SO ORDERED.**

_____

Paul R. Wallace, Judge